682 F.2d 779
 1984 A.M.C. 1069
 Theresa L. SUBINGSUBING, individually and as Administratrix
of the Estate of Andrew M. Subingsubing, deceased,
Plaintiff-Appellant,
v.
REARDON SMITH LINE, LTD., a corporation, Sir William Reardon
Smith & Sons, Ltd., a corporation, Defendants-Appellees.
 No. 81-5649.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 7, 1982.
Decided July 27, 1982.
 
 Sam Rosenwein, Studio City, Cal., for plaintiff-appellant.
 Michael L. Shannon, McCutchern, Black, Verleger & Hea, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, PREGERSON and REINHARDT, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 The Administratrix of the Estate of Andrew Subingsubing sued Reardon Smith Lines, Ltd., the owner of the vessel Victoria City, charging that her husband, a longshoreworker, died as a result of injuries caused by the negligence of the shipowner. The plaintiff contended that the decedent was injured when he stepped on a "dead-eye," a small piece of wood used to stop the step of a rope ladder from moving. The plaintiff brought forward evidence to show that the "dead-eye" came from a ladder not used by the longshoreworkers and that this ladder had been coiled up without inspection and put away by the vessel's crew before the longshoreworker's crew came on board. Plaintiff asserts that the rope ladder was used by the crew between the shifts of the longshoring gang. The decedent's longshoring gang worked the evening shift beginning at 6:00 p. m.; the slip and fall accident occurred at 6:10 p. m. A month after the accident, following two operations, the longshoreworker died.
 
 
 2
 The district court granted summary judgment for the vessel owner on the following ground:
 
 
 3
 On the undisputed facts of this case, the defendants owed the decedent no duty to inspect for, discover, remedy or warn of wood on the deck within the confines of cargo operations assigned to the stevedore, the employer of decedent. Scindia Steam Navigation Co. v. De Los Santos, (451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) ).
 
 
 4
 The Administratrix appeals from the summary judgment.
 
 
 5
 This case presents only one issue of importance: Did defendants owe a duty of reasonable care to remove from the ship deck, before longshoreworkers came aboard, a dangerous non-obvious tripping hazard?
 
 
 6
 I. ON THE FACTS AND CIRCUMSTANCES OF THIS CASE, DEFENDANTS OWED THE DECEDENT A DUTY OF REASONABLE CARE
 
 
 7
 Defendants argue that, on the facts of this case, only the stevedore owed a duty of reasonable care to the longshoreworker. Whether that duty was owed exclusively by the stevedore, or concurrently by the stevedore and vessel, depends upon the statutory and regulatory background and upon a correct understanding of the Supreme Court opinion in Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).
 
 
 8
 A. Statutory and Regulatory Background.
 
 
 9
 As a result of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), an injured longshoreworker can recover damages against a shipowner only upon showing the vessel's negligence. 33 U.S.C. § 905 (1976). Thus, an injured longshoreworker may no longer hold the vessel strictly liable for an "unseaworthy" condition that is injurious but not the result of the vessel's negligence.
 
 
 10
 Section 941 of Title 33, "Safety rules and regulations," provides in part that "(e)very employer (of longshoreworkers) shall furnish and maintain employment and places of employment which shall be reasonably safe for his employees in all employments covered by this chapter ...." Pursuant to his statutory authority, the Secretary of Labor has promulgated Safety and Health Regulations for Longshoring. The responsibility for complying with such regulations is placed upon longshoreworkers' employers, that is, stevedores. 29 C.F.R. § 1918.2(a) (1981). Under the heading "housekeeping," the Secretary requires: "Weather deck walking and working areas shall be kept reasonably clear of lines, bridles, dunnage and all other loose tripping or stumbling hazards." Id. § 1918.91(a).
 
 
 11
 Although the Safety and Health Regulations impose a duty on stevedores, there is no reason to suppose that it is an exclusive duty. Indeed, the Safety and Health Regulations provide that they do not relieve "owners, operators, agents or masters of vessels from responsibilities or duties now placed upon them by law, regulation or custom." Id. § 1918.2(b). A negligent shipowner's liability may be reduced, but that liability is not eliminated, by the negligence of the stevedore and the longshoreworker. See Davis v. Partenreederei M. S. Normannia, 657 F.2d 1048, 1050-51 (9th Cir. 1981).
 
 
 12
 B. The Shipowner's Duty under Scindia.
 
 
 13
 The case upon which the district court relied in granting summary judgment, Scindia, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1, has been a source of some confusion. Scindia involved facts quite different from those in the case at bar. In Scindia, a longshoreworker was injured by cargo that fell from an allegedly defective winch that was part of the ship's gear but operated by another longshoreworker. The Court held:
 
 
 14
 absent contract provision, positive law, or custom to the contrary ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore.... The shipowner, within limits, is entitled to rely on the stevedore, and owes no duty to the longshoremen to inspect or supervise the cargo operations.
 
 
 15
 Id. at 172, 101 S.Ct. at 1624. After pronouncing this rule the Court added, "The case should be returned to the District Court and, if necessary, tried to a jury under appropriate instructions." Id. at 179, 101 S.Ct. at 1627. Scindia did not uphold a summary judgment.
 
 
 16
 The issue in the instant case is not whether the shipowner had a continuing duty to inspect and supervise the operations of the stevedore, but whether the owner, in the exercise of a duty of reasonable care, should have removed the tripping hazard before the longshoreworker came on deck. Scindia is not dispositive on this point, but it does offer useful guidance.
 
 Scindia adopts the standard:
 
 17
 that the vessel owes to the stevedore and his longshoremen employees the duty of exercising due care "under the circumstances." This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property ....
 
 
 18
 Id. at 166-67, 101 S.Ct. at 1621.
 
 
 19
 Scindia drew attention to the statement of the Senate Committee Report on the 1972 Amendments that nothing in the proposed legislation was " 'intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition.' " Id. at 169 n.16, 101 S.Ct. at 1623 n.16 (quoting S.Rep.No.92-115, 92d Cong., 2d Sess. 2 (1972)). The Committee illustrated its point with a slip and fall example very similar to the instant case:
 
 
 20
 So, for example, where a longshoreman slips on an oil spill on a vessel's deck and is injured, the proposed amendments to Section 5 would still permit an action against the vessel for negligence. To recover, he must establish that: 1) the vessel put the foreign substance on the deck, or knew that it was there, and willfully or negligently failed to remove it; or 2) the foreign substance had been on the deck for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances.
 
 
 21
 Id. In the present case, the hazard was caused by a loose "dead-eye" rather than an oil spill. Perhaps the crew acted negligently by failing to find the defect in the rope from which the "dead-eye" was lost. Had the vessel's crew done so, it would have known or should have known that the "dead-eye" was missing and a possible hazard. Alternatively, the "dead-eye" may have been on the deck for a period of time sufficient to make the vessel negligent for failing to remove it. Such questions are typically left to the jury.
 
 
 22
 The defendant argues that Scindia "firmly reestablishes the principle that the shipowner and stevedore have co-terminous, but not overlapping, responsibilities for the safety of longshoremen working aboard the ship." It is true that the vessel cannot be charged with the negligence of the stevedore or longshoreworker. However, a defendant is not absolved of liability just because a stevedore is negligent. See Davis, 657 F.2d at 1050-51.
 
 
 23
 Various district court cases and cases from other circuits, which defendants have cited, cannot govern the disposition of the present case. In some of the cases, the danger was open and obvious, or developed only after the longshoreworkers came on board, or was actually known to the longshoreworkers but not to the vessel's crew. Some of the cases concern the duty of the vessel to supervise and inspect cargo operations, not the duty of the vessel to take reasonable care to make its deck safe for longshoreworkers coming aboard. Some of the cases actually went to trial rather than being dismissed on summary judgment. None of these cases supports the granting of summary judgment in the court below.
 
 CONCLUSION
 
 24
 The vessel owed the longshoreworker a duty that "extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property...." Scindia, 451 U.S. at 166-67, 101 S.Ct. at 1621. That duty should at least include reasonable care to keep the deck clear of dangerous and non-obvious tripping hazards at the time that the longshoreworker comes on board. Because the vessel owed the longshoreworker a duty, the decision is REVERSED and the case REMANDED for trial to determine whether that duty was breached.